TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Asset Forfeiture/General Crimes Sections
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2569/1785
    Facsimile: (213) 894-0142/0141
    E-mail: Victor.Rodgers@usdoj.gov
           Maxwell.Coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>$1,194,750.00 IN U.S. CURRENCY,<br><br>        Defendant. | Case No. 2:21-CV-07477<br><br>COMPLAINT FOR FORFEITURE<br><br>18 U.S.C. § 981(a)(1)(A) & (C) and 21 U.S.C. § 881(a)(6)<br><br>[FBI] |

    Plaintiff United States of America brings this claim against defendant $1,194,750.00 in U.S. Currency, and alleges as follows:

JURISDICTION AND VENUE

    1.    The government brings this <u>in</u> <u>rem</u> forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A) & (C) and 21 U.S.C. § 881(a)(6).

    2.    This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant in this action is $1,194,750.00 in U.S. Currency (the "defendant currency") seized by law enforcement officers on or about March 22, 2021, from box number 40 at U.S. Private Vaults, which is located at 9182 Olympic Boulevard in Beverly Hills, California.

6. The defendant currency is currently in the custody of the United States Marshals Service in this District, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of third parties may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

### Background Regarding U.S. Private Faults

8. U.S. Private Vaults ("USPV") is a company that was in the business of renting safe deposit boxes to customers. By providing and promoting total anonymity, USPV catered to and attracted criminals who sought to keep their identities and the source of their cash beyond the reach of banks, regulators, the IRS, and law enforcement.

9. The company's primary pitch to customers was anonymity, as reflected in its website that provided "Complete Privacy; Biometric Identification; No ID Required." USPV also boasted in its website "Our business is one of the very few where we don't even want to know your name. For your privacy and the security of your assets in our

vault, **the less we know the better**." This advertisement appealed to persons engaged in activities which they wished to hide from legal authorities and law-abiding financial institutions.

10. USPV also posted on its website "Four Reasons to Store Your Gold At USPV," information designed to market the company's services, which led to many involved in criminal activities to rent boxes from USPV. The posting asserted:

> Banks require clients to provide their social security number and a photo identification as a condition for renting a safe deposit box. Your information is then filed in the bank's central data system. This information can be easily accessed by government agencies (such as the IRS) or attorneys armed with court orders. If no one is aware you have a safe deposit box, the contents (your gold) are much safer.

By advocating a service which circumvented the IRS and persons "armed with court orders," customers engaged in illegal activity were attracted to and ultimately stored and secreted their criminal proceeds (which the government has a legitimate interest in) at USPV, instead of at banks or law-abiding financial institutions where their illegal activities would more likely be uncovered.

11. In the same post, "Four Reasons to Store Your Gold At USPV", USPV stated:

> As government chartered institutions, banks are now required to file "suspicious activity reports." . . . U.S. Private Vaults is not subject to federal banking laws and would only cooperate with the government under court order.

By marketing services in this fashion, some persons who ultimately

3

became USPV customers, were attracted by the advertisements because USPV's safe deposit box storage facilities offered them a much safer place to store their illegal criminal proceeds, unlike law-abiding banks, so as to eliminate their fear of apprehension by law enforcement and in promotion of their illegal activities.

12. Further, and in order to shield customers from having law enforcement uncover their illegal activity, USPV encouraged its customers pay their box rental fees in cash. In addition, USPV charged customers significantly higher prices than those charged by major banks, because USPV offered something which legitimate banks do not: anonymity, a place to store illegally obtained cash, tips and assistance in avoiding law enforcement and a willingness to look the other way with regard to all types of criminal conduct. And one of USPV's owners has gone so far as to brag about bringing to USPV individuals selling marijuana and other drugs illegally, based on the owner's connections, by marketing USPV as a safe place for those criminal actors and potential USPV customers to store their ill-gotten gains.

13. Not surprisingly, because USPV's business model is designed to appeal and cater to criminals, USPV has repeatedly been used by criminals to store criminal proceeds. Over the years, the contents of specific boxes at USPV have been forfeited because they are the proceeds of criminal activity. For example, on July 1, 2019, officers seized $215,653 from Michael Beaver, as he was leaving USPV, and then seized an additional $1,448,700 from his USPV boxes. Records from the Employment Development Department (the "EDD"), which is the California agency to whom employers must report wages earned by their employees, showed Beaver had no legitimate employment

income. In addition, Beaver's phones revealed evidence of drug trafficking activity, and the in excess of $1.6 million funds were forfeited as proceeds of unlawful activity.

14. On April 21, 2019, a victim was kidnapped in San Diego and brutally tortured in a warehouse, where the victim was hit with sticks and baseball bats; stripped naked; hit with a hammer on the victim's toes; and set on fire. Allan Newman was arrested and charged with kidnapping for ransom, attempted murder, torture and aggregated mayhem relative to the beating. The victim had been employed by a group of people who were engaged in distributing counterfeit marijuana vaping cartridges, and the group believed the victim had stolen a suitcase full of cash, which a vape cartridge customer had left at the warehouse. A portion of the funds had been placed by the victim's ex-wife in a safe deposit box at USPV, which the ex-wife retrieved and used to pay the victim's ransom.

15. On March 6, 2018, officers seized $101,080 and 26 gold bars from Vincent Ramos' USPV box. Ramos was the CEO of a company that facilitated the importation, exportation and distribution, internationally, of wholesale quantities of cocaine, heroin and methamphetamine. The currency and gold bars were forfeited, and Ramos was indicted and pleaded guilty to Racketeering and Drug Trafficking, in the Southern District of California. See United States v. Ramos, Case No. 18cr1404-WQH.

16. In September 2016, officers seized $592,450 and $435,190, respectively, from two USPV boxes of Mikhail Malykhin, an individual who was the leader of an identity theft/computer intrusion fraud ring. He and others were involved in a complex scheme involving altering hacked debit cards from a health insurance provider and

altering the codes to cash out the debit cards. Malykhin was indicted and pleaded guilty to committing access device fraud, and the over $1,000,000 in funds seized from Malykhin's boxes were forfeited as proceeds of the fraud and were used to pay restitution to victims of Malykhin's fraud. See United States v. Malykhin, Central District of California Case No. 16cr0688-DMG.

17. In November 2015, officers seized $1,543,400 from the USPV box of Gerald Lebowitz, which he stated had been brought into the United States illegally to avoid taxes. However, further investigation revealed that Lebowitz was part of a conspiracy to distribute methaqualone, a controlled substance, and officers seized over 45 kilograms of methaqualone powder and 12 canisters of the chemical o-Taluidine, both chemical precursors, during the course of the investigation. The funds were forfeited as criminal proceeds. See United States of America v. Lebowitz, Central District of California Case No. 17cr-0053-CAS.

18. On October 28, 2015, officers seized $500,000, 22 gold bars and 15 gold coins from the USPV box of Cyrus Irani, who was the master bookmaker and head of an illegal gambling organization that operated both internet and traditional bookmaking operations, and engaged in money laundering. He pleaded guilty to Enterprise Corruption, and 14 others in his organization were convicted of various gambling, money laundering and enterprise corruption charges. The assets found in Irani's box were forfeited as criminal proceeds.

The Property At Issue In This Case

19. The assets seized from the box at issue in this case are an example of persons storing assets from their illegal activity at USPV, as a result of USPV's advertisements, marketing efforts and

other transactions and activities over the web, on-line and in the mails, designed to induce persons to rent boxes at USPV to hide their property.  The assets seized represent the proceeds of criminal activity and were involved in money laundering activity, which therefore renders them subject to forfeiture.

20.  As set forth above, officers found $1,194,750.00 in U.S. currency (i.e., the defendant currency) inside box no. 40 at USPV. The funds contained numerous characteristics of drug trafficking and money laundering: they were stacked and bundled, and were in well-circulated bills.  In addition, the denominations of the currency were consistent with money laundering and drug trafficking.

21.  The owner of box number 40 failed to leave any identifying information within his box.  This is entirely consistent with a customer of USPV, whose business model catered to persons desirous of secreting their criminal proceeds from law enforcement by permitting customers to rent their boxes anonymously.  Box number 40 had over $1 million in cash, yet the boxholder chose to run the risk that in the event of the boxholder's unexpected incapacity or death, no one would be able to contact the boxholder's representatives or heirs in order to retrieve the funds.  This is another indicator of the illegality of the proceeds, as persons engaged in legitimate activity would normally leave identifying information in a safe deposit box containing such a large sum of funds.

22.  There are other indicia of narcotic trafficking linking the defendant currency to narcotic trafficking and money laundering.  A trained, state-certified narcotic detection canine gave a positive alert to the defendant currency, which signifies that the funds had recently been in close proximity with narcotics.  As of the positive

alert, the canine had received hundreds of hours of training (including weekly training after the canine's initial certification) in the detection of controlled substances, and the canine alerts to the scent of narcotics for which the canine is trained.  The canine's training has included routinely checking both circulated and uncirculated United States currency, in order to ensure that the canine does not alert to the actual odor of currency itself but instead to the odor of controlled substances on the currency.  Since the canine's initial certification, the canine has been responsible for the location and seizure of controlled substances and United States currency.

### FIRST CLAIM FOR RELIEF

23.  Plaintiff incorporates the allegations of paragraphs 1-22 above as though fully set forth herein.

24.  Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotic trafficking, was intended to be used in one or more exchanges for a controlled substance or listed chemical, or was used or intended to be used to facilitate a controlled substance or listed chemical violation, in violation of 21 U.S.C. § 841 et seq.  The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

### SECOND CLAIM FOR RELIEF

25.  Plaintiff incorporates the allegations of paragraphs 1-22 above as though fully set forth herein.

26.  Based on the above, plaintiff alleges that the defendant currency constitutes or is derived from proceeds traceable to a controlled substance violation, a specified unlawful activity as

8

defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D).  The defendant currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

### THIRD CLAIM FOR RELIEF

27.  Plaintiff incorporates the allegations of paragraphs 1-22 above as though fully set forth herein.

28.  Based on the above, plaintiff alleges that the defendant currency constitutes property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i) or (a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a controlled substance or listed chemical violation.  The defendant currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

### FOURTH CLAIM FOR RELIEF

29.  Plaintiff incorporates the allegations of paragraphs 1-22 above as though fully set forth herein.

30.  Based on the above, plaintiff alleges that the defendant currency constitutes property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1957(a), or property traceable to such property, with the specified unlawful activity being a controlled substance or listed chemical violation. The defendant currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, plaintiff United States of America prays:

(a)  that due process issue to enforce the forfeiture of the defendant currency;

(b)  that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

     (c)   that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

     (d)   for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

```
Dated: September 17, 2021       TRACY L. WILKISON
                                Acting United States Attorney
                                SCOTT M. GARRANGER
                                Assistant United states Attorney
                                Chief, Criminal Division


                                       /s/
                                VICTOR A. RODGERS
                                MAXWELL COLL
                                Assistant United States Attorneys
                                Asset Forfeiture/General Crimes
                                Sections

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA
```

VERIFICATION

I, Madison MacDonald, hereby declare that:

1. I am a Special Agent with the Federal Bureau of Investigation.

2. I have read the above Complaint for Forfeiture and know the contents thereof.

3. The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena. I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 17, 2021 at Los Angeles, California.

_____
MADISON MacDONALD